| | |
|---|---|
| JADA VIVIAN RUIZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:23-cv-00023 |
| | ) |
| CITY OF LAFAYETTE, | ) |
| JERRY WILMORE, Mayor, and | ) |
| JASON ROBERTS, Assistant Chief | ) |
| individually, and in his official capacity, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Jada Vivian Ruiz brought this four-count action against the City of Lafayette ("City"), its Mayor Jerry Wilmore ("Wilmore") and Assistant Chief of Police Jason Roberts ("Roberts"), arising from her employment as a dispatcher for the Lafayette Police Department. Before this Court is Defendants' Motions to Dismiss all counts (Doc. Nos. 14, 16) to which Ruiz responded in opposition (Doc. Nos. 27, 28), and Defendants have replied (Doc. Nos. 31, 39). For the following reasons, Defendants' Motions to Dismiss will be granted in part and denied in part.

I.  **FACTUAL ALLEGATIONS** [1]

Ruiz alleges that Assistant Chief Roberts subjected her to unwelcome sexual advances and overtures. (Doc. No. 13 at 1). As a twenty-year-old female, Ruiz began her career with the Lafayette Police Department as a dispatcher. (Doc. No. 13 at 3). After she was interviewed and hired by Assistant Chief Roberts, he repeatedly reminded her that he was responsible for hiring

---

[1] The Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007).

her and had the authority to terminate her. (Id.). About ten months later, Assistant Chief Roberts began a pattern of behavior showing his fondness for Ruiz. (Id. at 4). At his whim, he entered her workspace while she was on duty to touch various parts of her body without her consent. (Id.). His actions occurred weekly and sometimes even more frequently. So, Ruiz decided to document his behavior. (Id.).

From May 2022 through December 2022, she alleges Assistant Chief Roberts created a sexually hostile work environment. This started with him touching her hair, her shoulders, and her arms. (Id.). Sometimes he would touch her face while fondling her hair. (Id. at 5). Next, the Assistant Chief asked her to hug him. (Id.). Then, all without her permission, he kissed her. (Id.). He did so by grabbing Ruiz's face in his hands and kissing her on the cheek and forehead. (Id.). His kissing was not the end of his sexual advances. (Id.). He took it upon himself to give her a massage. (Id.). During the massage, he moved his hands down her back, coming from the left side of her body, down towards the right side of her body, allowing his hand to linger on the backside of Ruiz's right hip and buttocks for a while. (Id.). Assistant Chief Roberts was so bold that he did these things sometimes in the presence of others. (Id.).

Ruiz was not the only subject of Assistant Chief Roberts' unwelcome sexual advances. (Id.). Some female employees quit their jobs because of his inappropriate conduct. (Id. at 9). But one of Ruiz's coworkers, Samantha Hudson, stayed employed even after Assistant Chief Roberts called her a "whore". (Id. at 5).

While Ruiz did not initially report Assistant Chief Roberts' misconduct because he threatened her job security, others did. (Id. at 6). Ryan Craighead is one example who reported Roberts' actions to Detective Reed. He talked to Ruiz, (id.), who confirmed Roberts' abusive work behavior towards her. (Id.). Detective Reed was not shocked according to Ruiz. (Id.). Detective

2

Reed advised Mayor Wilmore of Roberts' behavior. Perhaps like Reed, the Mayor was not surprised because he knew about past allegations of Roberts' sexual misbehavior. (Id.).

Mayor Wilmore met with Ruiz, who again confirmed Roberts' sexual misbehavior. (Id.). He assured Ruiz that he would begin an investigation. (Id. at 6). Within twenty-four hours, Mayor Wilmore informed Ruiz that the investigation was concluded. (Id.). The City decided to give Roberts a written reprimand even though Mayor Wilmore felt that it was insufficient. (Id.). Indeed, Mayor Wilmore wanted to do more, but the decision was ultimately the City's—not his. (Id.).

Unsatisfied with the outcome, Ruiz appealed the reprimand decision. (Id.). Despite his misgivings, Mayor Wilmore reaffirmed the City's decision. (Id. at 8). Thereafter, Roberts continued to enter Ruiz's workspace, notwithstanding that he had been told to stay away from her. (Id. at 6).

Ruiz seeks damages for Roberts' behavior and brings the following claims (1) hostile work environment under the Tennessee Human Rights Act ("THRA") (Count I), (2) hostile work environment under 42 U.S.C. § 1983 (Count II), (3) right to bodily integrity under 42 U.S.C. § 1983 (Count III), and (4) Assault and Battery (Count IV).

## II.   LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), a plaintiff need only provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). The allegations "must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual content that allows the

3

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

### III. ANALYSIS

#### A. Section 1983 Claims

This Court will first address the Section 1983 and THRA claims. A valid Section 1983 claim must establish two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ., 542 F.3d 529, 534 (6th Cir. 2008) (citing McQueen v. Beecher Cmty. Sch., 433 F.3d 460, 463 (6th Cir. 2006)). Roberts and Wilmore assert qualified immunity to avoid 1983 liability.

##### a. Official Capacity Claims

As a preliminary matter, Wilmore moves to dismiss because being sued in his official capacity is "superfluous or redundant" because the City is a party in this action. (Doc. No. 15 at 9). Ruiz agrees. (Doc. No. 28 at 4). It is well-settled that a lawsuit against an individual in his official capacity is the equivalent of a lawsuit against the governmental entity employing him. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Ruiz did not specify the capacity in which she sued Wilmore, but there is a legal presumption that a party is sued in their official capacity when it is not specifically stated otherwise in the complaint. See Wells v. Brown, 891 F.2d 591, 593-94 (6th Cir. 1989) (plaintiffs are required to specify what capacity they are suing defendants in in their Section 1983 actions, absent specificity, the Court presumes that the defendant is being sued in his official capacity). Wilmore's motion to dismiss will be granted.

4

### b. Due Process –Bodily Integrity

Ruiz contends that Roberts, acting under the color of state law, deprived her of her Fourteenth Amendment Right to bodily integrity. Courts recognize two categories of substantive due process rights: (1) the denial of a right, privilege, or immunity guaranteed by the Constitution or federal statute; and (2) claims that target official acts. Lillard v. Shelby Cty. Bd. of Educ., 76 F.3d 716, 724 (6th Cir. 1996). The first category of claims exists when a plaintiff alleges the violation of either an enumerated or unenumerated fundamental right. The second category of claims requires allegations that an official's conduct is arbitrary or shocks the conscience of the court. Handy-Clay v. City of Memphis, 695 F.3d 531, 547 (6th Cir. 2012). Ruiz's allegations do not evoke an enumerated, fundamental right, nor does it involve an arbitrary government action, so the Court must consider whether Roberts' conduct shocks the conscience of this Court.

Accepting all of Ruiz's allegations as true, Roberts' conduct, although highly inappropriate, does not "shock the conscience" for substantive due process purposes. Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ., 103 F.3d 495, 506 (6th Cir. 1996) (finding a substantive due process violation against a school teacher when the teacher sexually harassed and raped a minor student); Lillard, 76 F.3d at 726 (finding that a teacher who rubbed a student's stomach while making suggestive comments, slapped the student across her face, and verbally abused the student did not rise to the level of a substantive due process violation). Thus, the Court will grant Defendants' motion to dismiss Ruiz's Section 1983 substantive due process claim.

### c. Equal Protection and THRA

Defendants move to dismiss Ruiz's THRA and Equal Protection claims because "Ruiz fail[ed] to state a viable claim for a hostile work environment." (Doc. No. 15 at 12 and Doc. No. 17 at 8). The Court disagrees. The Equal Protection Clause of the Fourteenth Amendment

5

provides that a state may not deny to any person within its jurisdiction the equal protection of the laws. Maye v. Klee, 915 F.3d 1076, 1085 (6th Cir. 2019) (quoting U.S. Const. amend. XIV, § 1). To prevail here, Ruiz must satisfy the hostile work environment standard under Section 1983 and THRA which mirrors Title VII. See, e.g., Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1011 (6th Cir. 1987); Bailey v. USF Holland, Inc., 526 F.3d 880, 885 (6th Cir. 2008). Accordingly, the analysis of Ruiz's Section 1983 Equal Protection and the THRA claims are the same.

### i. Hostile Work Environment

To allege a hostile work environment, Ruiz must allege facts that plausibly establish the following: (1) she was a member of a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on her sex; and (4) the harassment created a hostile work environment, and that (5) the employer is vicariously liable. Williams v. Gen. Motors Corp., 187 F.3d 553, 560 & n. 2 (6th Cir. 1999). The gravamen of any sexual harassment claim is that the alleged sexual advances were unwelcome" and "the correct inquiry is whether [plaintiff] by her conduct indicated that the alleged sexual advances were unwelcome." Meritor Savings Bank v. Vinson, 477 U.S. 57, 66 (1986). A hostile work environment arises "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

This severe or pervasive test has both an objective element and subjective element—the conduct must constitute a hostile or abusive work environment both to a reasonable person and the 0actual victim. Grace v. USCAR, 521 F.3d 655, 678 (6th Cir. 2008). It is determined based upon the totality of circumstances, Williams, 187 F.3d at 562, considering "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

6

offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

As an initial matter, Roberts cannot be held personally liable for violations under the THRA. Strong v. HMA Fentress Cty. Gen. Hosp., LLC, 194 F. Supp. 3d 685, 688 n.1 (M.D. Tenn. 2016) (holding that there is no independent supervisor liability under the THRA for sexual harassment). The THRA claim is dismissed as to Roberts.

Ruiz has plausibly alleged a severe or pervasive workplace. Ruiz's allegations paint a colorful picture of Roberts engaging in a prolong pattern of hugging, kissing, fondling, massaging, and touching Ruiz in the police department while she was on duty. Roberts' behavior included verbal and physical action that can easily be interpreted as offensive and threatening, as well as an impediment to Ruiz's work. To be sure, this is not a case of a single or a couple of sexually offensive actions, but objectively and subjectively Ruiz alleges a course of conduct, for more than six months, when Roberts made repulsive sexual advances toward Ruiz. See Burnett v. Tyco Corp., 203 F.3d 980, 983–984 (6th Cir. 2000) (finding no hostile work environment when a single battery was coupled with two offensive remarks over a six-month period). Abeita v. TransAmerica Mailings, Inc.,159 F.3d 246, 252 (6th Cir. 1998) (acknowledging that comments that are commonplace, ongoing, and continuing establish pervasiveness). In terms of severity, Roberts not only touched Ruiz's body multiple times, but he fondled her hair, grabbed her face, forcibly kissed her, massaged her back and touched her buttocks. See Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 334 (6th Cir. 2008) ("element of physical invasion is considered more severe than words alone."). Ruiz has alleged sufficient facts that if true crossed the line of illegal work conduct.

Ruiz has plausibly alleged that the conduct was severe or pervasive as to interfere with her work. Ruiz feared that Roberts would retaliate against her as he constantly reminded her that he

7

hired her and could fire her at his own will. Indeed, as the Assistant Chief of Police, Roberts had that apparent authority to hire and fire. Ruiz alleges she now suffers from anxiety and borderline depression due to Roberts' conduct. Ruiz has alleged sufficient facts for this Court to infer that Roberts' conduct would offend a person of normal sensibilities several times over and that she found it hostile and abusive. To the extent, Defendants believe that Ruiz may have waived her hostile work argument, Ruiz did nothing more than plead in the alternative, which is allowed. Fed. R. Civ. P. 8(d)(2). In short, Ruiz has alleged sufficient facts for this Court to draw the reasonable inference that the cumulative effect of all of these alleged actions created a hostile work environment.

### ii. Employer Liability

The City alleges that Ruiz's hostile work environment claim fails because she has not demonstrated employer or co-worker liability. (Doc. No. 15 at 15, 17). It is unmistakable that this case involves supervisor liability because Roberts is the Assistant Chief. An employer is vicariously liable for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee. Clark v. United Parcel Serv., Inc., 400 F.3d 341, 348 (6th Cir. 2005). If the supervisor's harassment culminates in a tangible employment action (*i.e.,* "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761, (1998), the employer is strictly liable. Id. If no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the

8

employer provided.  Faragher v. Boca Raton, 524 U.S. 775, 807 (1998).  While no tangible employment action is alleged, the Complaint sufficiently alleges that the City has failed to enforce its policy against sexual harassment in the workplace.  The Complaint easily supports supervisor liability against the City.  That Ruiz alleges that Roberts harassed her for over six months suggest a lack of reasonable care by the City.  That other employees observed Roberts' actions against Ruiz reflects the City's lack of due diligence.  That the City's investigation concluded in 24 hours certainly questions the veracity of the investigation.  And that Roberts' behavior persisted after the investigation is sufficient to suggest that the City's preventive and correction opportunities were feckless.

### d. Qualified Immunity

Roberts' request for dismissal based upon qualified immunity is premature.  Qualified immunity requires Ruiz to establish that Roberts "(1) violated a constitutional right that (2) was clearly established."  Anders v. Cuevas, 984 F.3d 1166, 1175 (6th Cir. 2021).  First, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," is a constant theme of Sixth Circuit cases.  Buddenberg v. Weisdack, 939 F.3d 732, 738–39 (6th Cir. 2019) (quoting Wesley v. Campbell, 779 F.3d 421, 433–34 (6th Cir. 2015)).  Moreover, "[a]lthough an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12."  Id.  In any case, at this early stage of the case, Ruiz has alleged facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right."  Buddenberg, 939 F.3d at 738 (quoting Johnson v. Moseley, 790 F.3d 649, 653 (6th Cir. 2015)).

Over thirty years ago, the Supreme Court held that sexual harassment in the workplace is unconstitutional, and this includes repeated work behavior like hugging, kissing and massaging an employee based on their gender. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986) (finding a hostile work environment where supervisor made repeated demands for sexual favors). Courts have also repeatedly held that uninvited touching can give rise to a hostile work environment. See Faragher, 524 U.S. at 775 (finding a hostile work environment when a supervisor subjected a female employee to uninvited and offensive touching, lewd remarks, and offensive references to women); Iyebote v. Meharry Medical Coll., 2022 WL 508893, at *5 (M.D. Tenn. Feb. 18, 2022) ("unwanted touching is one of the most offensive things that can occur in the workplace and should never be tolerated."). As discussed, Ruiz has sufficiently alleged a plausible violation of a clearly established constitutional right to be free of sexual harassment in the workplace.

e. **Punitive Damages**

Roberts argues that Ruiz's claim for an award of punitive damages pursuant to Section 1983 "for his malicious and reckless conduct" should be dismissed. (Doc. No. 17 at 16). Punitive damages are appropriate in a Section 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Because punitive damages are a mechanism for punishing the defendant for "willful or malicious conduct," they may be granted "only on a showing of the requisite intent." Memphis Community School Dist. v. Stachura, 477 U.S. 299, 306 n. 9 (1986). Here, Ruiz's allegations do not justify a plausible inference that Roberts' conduct was motivated by evil motive or intent or involved a reckless or

10

callous indifference to the federally protected rights of others. Accordingly, the motion to dismiss Ruiz's demand for punitive damages will be granted.

### f. City – Municipal Liability

The City argues that Ruiz failed to plausibly allege any "official municipal custom or policy that was somehow a moving force behind the alleged violations of her Section 1983 claims." (Doc. No. 15 at 21). A municipal liability claim under Section 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Ruiz can make a showing of an illegal policy or custom by demonstrating one of the following "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." Id. at 386 (alterations in original) (quoting Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir.2013)). A "custom" is a practice that "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," even though it is not formally approved. Ford v. Cnty. of Grand Traverse, 535 F.3d 483, 495–96 (6th Cir. 2008). At this stage, Ruiz need only plead sufficient factual allegations to allow the court to draw the reasonable inference that a municipal custom or policy caused the alleged violations. Warren v. Metro. Gov't of Nashville & Davidson Cnty., 2015 WL 3417844, at *6 (M.D. Tenn. May 27, 2015). She has done so.

Ruiz alleges that the City "maintained a custom of tolerance to the violation of female employees right to equal protection when it openly permitted actions of supervisors without any repercussions" (Doc. No. 13 at 10). Her allegations are supported because the City has a pattern of condoning sexual harassment towards women. Specifically, Samantha Hudson was called a

11

whore by Roberts and other women quit their jobs because of Roberts' inappropriate conduct. See Fletcher v. O'Donnell, 867 F.2d 791, 793–94 (3d Cir. 1989) (noting that a municipal "custom" may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice). The allegations attributed to the Mayor also reflect the City's tolerance to sexual advances in the workplace. Ruiz alleges that the Mayor agreed that giving Roberts a written reprimand was not sufficient punishment for Roberts, but the City would not let him do more. Construing the Complaint in the light most favorable to Ruiz, she has alleged sufficient facts for this Court to plausibly infer that a custom of tolerance to sexually hostile work environment existed in the Lafayette Police Department.

### B. State Law Claims

#### a. Assault and Battery

Assault is "(1) An intentional attempt or the unmistakable appearance of an intentional attempt to do harm to, or to frighten, another person; and (2) The present ability or the unmistakable appearance of the present ability to do that harm or to cause that fright." Doe v. Andrews, 275 F. Supp. 3d 880, 887 (M.D. Tenn. 2017) (quoting T.P.I. Civil § 8.01). Battery is "an intentional act that causes an unpermitted, harmful or offensive bodily contact." Lacy v. Hallmark Volkswagen Inc. of Rivergate, No. M2016-02366-COA-R3-CV, 2017 WL 2929502, at *4 (Tenn. Ct. App. 2017) (quoting Doe v. Mama Taori's Premium Pizza, LLC, 2001 WL 327906 at *4 (Tenn. Ct. App. 2001)). Contact is "offensive" for purposes of the tort if it "infringes on a reasonable sense of personal dignity ordinarily respected in a civilized society." Id.

Ruiz has alleged that Roberts grabbed Ruiz's face, fondled her hair, forcibly kissed her, massaged her back, and touched her buttocks—all without her consent. Grabbing another person without permission can constitute an assault, see, Wells v. J.C. Penney Co., 2002 WL 31288979 at

12

*4 (Tenn. Ct. App. 2002), as can unwanted hugging and kissing, see, Baltrip v. Norris, 23 S.W.3d 336, 338 (Tenn. Ct. App. 2000). This court can use its common sense to infer that Roberts' actions were intentional, harmful, and offensive. Ruiz has alleged sufficient facts for this Court to plausibly infer that Roberts committed assault and battery. Roberts' motion to dismiss the assault and battery claim is denied.

### b. TGTLA

The City avers that it retains immunity under Tennessee's Governmental Tort Liability Act ("TGTLA") for Ruiz's assault and battery claims because the claims arise out of the allegations that her civil rights were violated. Tennessee governmental entities are immune from prosecution unless Tennessee's legislature specifically waives that immunity. See Limbaugh v. Coffee Medical Center, 59 S.W.3d 73, 79 (Tenn. 2001). The legislature made an exception to the TGTLA for certain intentional torts, meaning that it did not waive immunity for those enumerated intentional torts. Limbaugh, 59 S.W.3d at 81. Assault and Battery are not included in the intentional tort exception of the TGTLA. See Tenn. Stat. § 29-20-205.

Because the alleged assault and battery of Ruiz occurred during a civil rights action pursuant to Section 1983 and are essentially companion claims, the City is immune from Ruiz's common law assault and battery claims. See Hargis v. Overton County, 2023 WL 7930045 at, *27 (M.D. Tenn. Nov. 15, 2023); Campbell v. Anderson County, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010) (finding that the County was immune from the state law claims under the TGTLA because the claims were predicated on intentional tortious conduct involving the violation of her civil rights under Section 1983). Accordingly, the City's motion to dismiss the assault and battery claims is granted.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss will be granted in part and denied in part. An appropriate order will be entered.

```
_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE
```